# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 611 | **DATE** | 2/6/2002 |
| **CASE TITLE** | UNITED STATES OF AMERICA ex rel Brian Jones vs. James A. Chrans | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  The petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 0 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| EF | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  02 FEB -7 PM 4:42  Date/time received in central Clerk's Office | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES of AMERICA, ex rel.          )
BRIAN JONES,                               )
                                           )      No. 00 C 0611
                        Petitioner,        )
                                           )      HONORABLE CHARLES R. NORGLE
        vs.                                )
                                           )
JAMES A. CHRANS,                           )
                                           )
                        Respondent.        )

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Brian Jones' ("Jones") petition for writ of habeas corpus under 28 U.S.C.

§ 2254. For the following reasons, the court denies the petition.

## I.  BACKGROUND[1]

On September 1, 1993, Jones encountered an acquaintance, Kenneth Wells, who was armed

with a .25 caliber handgun. Wells told Jones that he, Wells, wanted to rob and shoot someone.

Jones accompanied Wells towards West Madison Street in Chicago, and saw Wells load an

ammunition clip into the weapon.

Around this time, Jeanette Baldwin was leaving a currency exchange at 4333 West Madison,

where she had just cashed a $434.00 Social Security check. Baldwin walked to a nearby bus stop,

where Wells and Jones approached her. Wells put his arm around Baldwin's neck and said "This

is a robbery." Baldwin resisted, broke away from Wells, and began to run. Wells aimed his gun at

---

[1]The court takes the relevant facts from the opinion of the Illinois Appellate Court on direct
appeal, which are presumed correct. 28 U.S.C. § 2254(e).



Baldwin and fired three shots, striking Baldwin. Baldwin ran into a store, where she collapsed and died.

Wells and Jones ran down Madison street. Wells gave the weapon to Jones, who was supposed to dispose of it. Jones threw the weapon into an alley, and as he did so, he ran past Clifton Marvel, an off duty Cook County Deputy Sheriff. Marvel had heard the shots, and saw Jones with the gun. Marvel did not apprehend Jones, but Marvel later identified Jones in a lineup.

Jones was charged with attempted armed robbery, unlawful use of a weapon, and first degree murder. The state dropped the weapon charge, and proceeded to trial on attempted armed robbery and murder. At trial, the jury convicted Jones of attempted armed robbery, but could not reach a verdict on the murder charge. The trial judge accepted the guilty verdict for attempted armed robbery and declared a mistrial on the murder charge. The state re-tried Jones for murder, and he was convicted at the second trial. Jones was sentenced to concurrent terms of 45 years for murder, and 13 years for attempted armed robbery.

Jones appealed both convictions and sentences, and the appeals were consolidated. Jones argued: (1) the state's use of peremptory challenges to African-American jurors violated Batson v. Kentucky, 476 U.S. 97 (1986); (2) the trial court made an improper inquiry into the numerical division of the jury during its deliberations; (3) the trial judge engaged in improper ex parte communications with the jury; (4) the trial court erroneously admitted hearsay evidence; (5) the prosecution made a misstatement of the law during closing argument; (6) the sentences were excessive; and (7) the sentences should be modified so they are not consecutive to an earlier two year sentence for a violation of probation. The Illinois Appellate Court affirmed Jones' convictions and

sentences in all respects. Jones then sought leave to appeal to the Illinois Supreme Court, which denied the request.

Jones continued to attack his conviction in the state court with a pro se post-conviction petition under Illinois law. Jones' post-conviction petition raised numerous arguments.[2] The trial court summarily denied the petition as patently without merit, finding that most of Jones' arguments were frivolous, waived, or res judicata. Jones appealed the denial, and received appointed counsel, who later moved to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). The Illinois appellate court granted counsel's Finley motion, stating that it had carefully reviewed the record and found no arguable basis for collateral relief, and affirmed the dismissal of Jones' post-conviction petition. Jones petitioned the Illinois Supreme Court for leave to appeal, but the petition was denied.

On January 31, 2000, Jones filed in this court a petition for habeas corpus pursuant to 28 U.S.C. § 2254, alleging a host of issues, which the court consolidates as:

> 1. denial of federal rights during state post-conviction proceedings;
> 2. improper ex parte communications between the judge and jury;
> 3. the trial judge communicated with African-American jurors, causing those jurors to vote to convict;
> 4. the trial judge coerced a verdict;
> 5. improper testimony from Marvel;
> 6. perjurious testimony from Leanne Binion;
> 7. ineffective assistance of trial counsel;
> 8. jury prejudice;

---

[2] Jones' post conviction petition raised the following issues: (1) improper ex parte communications between the judge and jury; (2) the trial court communicated with the only two African-American jurors, causing them to vote to convict Jones; (3) Clifton Marvel committed perjury, withheld evidence, and threatened a defense witness; (4) the state knowingly used the perjured testimony of Leanne Binion; (5) ineffective assistance of trial counsel; (6) certain jurors had relatives that were law enforcement agents; (7) the deputy sheriff/bailiff assigned to the courtroom exhibited prejudice towards Jones; (8) an improper jury instruction; (9) the trial court demonstrated hostility towards Jones' attorney; (10) the unfair lineup procedures were unfair; and (11) ineffective assistance of appellate counsel.

9. deputy sheriff/bailiff prejudice;
10. an erroneous jury instruction;
11. trial judge prejudice;
12. an unfair lineup;
13. a <u>Batson</u> issue;
14. a misstatement of law by the prosecutor;
15. a confrontation clause violation;
16. ineffective assistance of appellate counsel.

Respondent filed an answer, arguing that Jones' claims were either procedurally defaulted or without merit. The court reviewed the pleadings and exhibits, and ordered supplemental briefing on three issues: (1) whether the trial court's ex parte communications with the jury constituted a structural error; (2) whether the harmless error analysis of <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) survived the changes in habeas corpus law effected by The Antiterrorism and Effective Death Penalty Act ("AEDPA"); and (3) whether <u>Wilkinson v. Cowan</u>, 231 F.3d 347 (7th Cir. 2000) affected Respondent's assertion that Jones had waived certain arguments. The court also ordered respondent to file supplemental exhibits concerning the ex parte communication issue. After receiving these papers, Jones' petition is ripe for ruling.

## II.  DISCUSSION

The court first discusses the general rules of federal habeas review, including procedural default, and then discusses each of Jones' claims.

### A.  Standard of review:

Jones' case is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) governs alleged errors in the state court's application of Supreme Court precedent to the facts of the case. See Boss, 263 F.3d at 739; see also Williams, 120 S. Ct. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). While federal courts have an independent duty to say what the law is, Williams, 120 S. Ct. at 1522, an erroneous application of the law by a state court will not be grounds

5

for relief unless the application was also unreasonable. See id.; Boss, 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See Williams, 120 S. Ct. at 1521-22 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 120 S. Ct. at 1520-22; Washington v. Smith, 219 F.3d 620, 628 & n.5 (7th Cir. 2000).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct."). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.     Procedural default:**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims).

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas claim that were not raised in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present

three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claim in a federal habeas petition. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). But, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun

v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

Recently, the Seventh Circuit addressed the effect on federal habeas review of a state court granting Finley motion. See Wilkinson, 231 F.3d at 350-51. Pennsylvania v. Finley allows appointed counsel to withdraw from an appeal of state post-conviction proceedings when counsel has reviewed the record and found no issues of merit. See e.g. Wilkinson, 231 F.3d at 350-51. It is not unusual for an Illinois Appellate Court to grant a Finley motion, and in so doing, write that it has carefully reviewed the record and has found no arguable issue of merit. Wilkinson holds that such a disposition is a decision on the merits, rather than a decision based on a procedural default. See Wilkinson, 231 F.3d at 350-52. Thus, a petitioner in that situation has preserved for federal habeas review the merits of all claims presented in the post-conviction petition. See id.; Braun, 227 F.3d at 912.

Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a Constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 1591 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917 (citing cases). With these principles in mind, the court addresses Jones' petition.

## C.  Jones' Arguments:

Each of Jones' claims for habeas relief and their factual basis is discussed individually below.

### 1.  Post-Conviction Proceedings:

8

Jones argues that certain purported errors during his post-conviction proceedings in Illinois state court require relief under § 2254. Jones filed a pro se post-conviction petition in the Illinois state court, which was summarily dismissed without an evidentiary hearing. On appeal, the Illinois Appellate Court summarily affirmed the denial of post-conviction relief. Jones alleges that these proceedings violated his federal Constitutional rights. Specifically, he argues that he was denied assistance of counsel, the trial court erred in not holding an evidentiary hearing, and the appellate court erred by not conducting a plenary review of the petition. Respondent argues, and the court agrees, that post-conviction proceedings under Illinois law cannot be the basis for federal habeas relief.

Relief under § 2254 is only available for violations of federal law that occur during a criminal conviction in state court. See 28 U.S.C. § 2254(a). State sanctioned post-conviction collateral proceedings are civil in nature, rather than criminal. Therefore, § 2254 does not afford relief for any errors that occur during a state post-conviction proceeding. See Finley, 481 U.S. at 556-57. Indeed, there is no federal right to a post-conviction hearing in state court, nor is there a federal right to counsel in any state sanctioned post-conviction proceeding. See id.; see also Liegakos v. Cooke, 106 F.3d 1381, 1384-85 (7th Cir. 1997) (noting that states are free to modify or even abolish collateral review of convictions); Zamora v. Pierson, 158 F. Supp. 2d 830, 835 (N.D. Ill. 2001) (collecting authority). Jones' argument that the Illinois post-conviction proceedings violated his federal Constitutional rights is untenable. This claim is denied on its merits.

### 2. Trial Court's Ex Parte Communications With The Jury:

During Jones' first trial, the judge engaged in ex parte communications with the jury. After the jury began deliberating, the judge and prosecutors attended a large charitable function at a

restaurant, while Jones' counsel remained in the courtroom. The judge left with the assigned deputy sheriff a phone number where the judge could be reached. During deliberations, the jury sent out seven notes with questions. The deputy sheriff called the judge, who fashioned responses over the phone. The judge then instructed the deputy to show the notes and the judge's response to Jones' counsel before relaying the responses to the jury.

In post-trial motions and on direct appeal, Jones' counsel asserted that the deputy did not show him the notes until after the judge gave his response, and that counsel never had the opportunity to object, or provide input for the responses. This issue was the subject of two post-trial hearings, where the trial judge heard the representations of counsel and testimony from the deputy sheriff. The judge found as a matter of fact that Jones' counsel had seen the notes and the judge's responses prior to the deputy sheriff relaying the responses to the jury. As to counsel's argument to the contrary, the judge dismissed it as poor recollection on the part of counsel.

Relying on People v. Childs, 636 N.E.2d 534 (Ill. 1994), the Illinois Appellate Court held that the judge's handling of the jury notes constituted improper ex parte communications between the judge and the deliberating jury. The Court noted that jury questions should be addressed in open court and in the defendant's presence, which did not occur in Jones' case. The Illinois Appellate Court then discussed each of the notes and found that the ex parte communications were harmless beyond a reasonable doubt.[3] Several of the notes were requests to see transcripts of prosecution witnesses. The judge's response was that the transcripts were not available, and referred the jurors to the written instructions and ordered them to continue to deliberate. Other notes informed the

---

[3]The court ordered Respondent to submit copies of the jury's notes as a supplemental exhibit. Respondent informed the court that the notes are not part of the record, although it appears that they were at one time. Thus, the court relies on the Illinois Appellate Court's discussion of the notes.

judge that the jury was having difficulty reaching a verdict. The judge ordered the jury to continue to deliberate. The final question asked for a definition of reasonable doubt. The judge responded "There is no definition. It's what it means to you." The Illinois Appellate Court held that the judge's responses were proper, and that the error was harmless beyond a reasonable doubt.

This claim raises two issues that require discussion. First, were the ex parte communications trial error, which is amenable to harmless error analysis, or structural error that defies harmless error review? Second, if the ex parte communications were trial error, is habeas review of the Illinois Appellate Court's harmless error analysis governed by the standards announced in Brecht v. Abrahamson, 507 U.S. 619 (1993), or by the standards written in the AEDPA? The court addresses each of these questions in turn.

### a. Trial Error or Structural Error:

The Illinois Appellate Court correctly analyzed the ex parte communications as trial error. The United States Supreme Court has recognized a distinction between what are called trial errors and so-called structural errors. See e.g. Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 1833-34 (1999). Most errors that occur during the course of a trial, even those of Constitutional magnitude, can be harmless. Id. at 1833 (citing Arizona v. Fulmnante, 499 U.S. 279, 306 (1991)). These errors are classified as trial errors, and are subject to harmless error analysis. Neder, 119 S. Ct. at 1833. But there are some Constitutional errors that "*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. (emphasis in original). These structural errors affect the fundamental integrity of the trial and its reliability for finding guilt or innocence, as well as the public's perception of criminal adjudications. See United States v. Harbin, 250 F.3d 532, 543 (7th Cir. 2001) (discussing structural error on direct appeal under Federal Rule

of Criminal Procedure 52(a)). Structural errors defy harmless error analysis and require automatic reversal, or in the case of habeas review, granting of the writ. Neder, 119 S. Ct. at 1833; Harbin, 250 F.3d at 543; Caralino v. Washington, 122 F.3d 8, 9-10 (7th Cir. 1997).

The class of structural errors is small. In Johnson v. United States, 520 U.S. 461, 468-69 (1997), the Supreme Court delineated the class as: Gideon v. Wainwright, 372 U.S. 335 (1963) (complete denial of right to counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254 (1986) (racial discrimination in grand jury selection); McKaskle v. Wiggins, 465 U.S. 168 (1984) (denial of the right to self-representation at trial); Waller v. Georgia, 467 U.S. 39 (1984) (denial of a public trial); Sullivan v. Louisiana, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction).

The Supreme Court has not held that ex parte communications between a judge and jury are structural error. Indeed, the Supreme Court has expressly held that such a rule would ignore the "day-to-day realities of courtroom life and undermine[] society's interest in the administration of criminal justice." Rushen v. Spain, 464 U.S. 114, 118-19 (1983). Nevertheless, some cases have found structural error in a judge's absence during deliberations, or in ex parte communications between a judge and jury, based on the particular facts present. See Riley v. Deeds, 56 F.3d 1117, 1119-22 (9th Cir. 1995); Delgado v. Rice, 67 F. Supp. 2d 1148, 1159-63 (C.D. Cal. 1999). For example, in Riley a deliberating jury requested a readback of a crime victim's testimony. See 56 F.3d at 1119. The judge was not present in the courthouse, and could not be located to address the jury's request. Id. In lieu of the judge, the judge's law clerk granted the jury's request, and presided over testimony readback. Id. The Ninth Circuit held that the absence of the judge and the actions of the law clerk constituted a complete abdication of judicial control over the proceedings, and was

structural error. Id. at 1119-22; see also Delgado, 67 F. Supp. 2d at 1159-63 (structural error occurred where judge gave an ex parte substantive instruction to at least some of the jurors as they arrived to begin a second day of deliberations).

Riley and Delgado, however, are not the norm, as the overwhelming majority of cases apply a harmless error analysis to ex parte communications between a jury and a judge. See Rushen, 464 U.S. at 117-22; Winters v. Miller, 274 F.3d 1161, 1168 (7th Cir. 2001); United States v. Bishawi, 272 F.3d 458, 461-63 (7th Cir. 2001); Ellsworth v. Levenhagen, 248 F.3d 634, 640-42 (7th Cir. 2001); Ashford v. Gilmore, 167 F.3d 1130, 1136-37 (7th Cir. 1999); but see United States v. Arnold, 238 F.3d 1153, 1155 n. 8 (9th Cir. 2001) (noting a split of authority on the issue of error arising out of a judge's absence during jury deliberations, and a further split as to whether any such error is structural error).

The Seventh Circuit instructs that an ex parte communication between a deliberating jury and a judge creates a rebuttable presumption of error, which can be overcome by a showing that any error was harmless. See Winters, 274 F.3d at 1168; Bishawi, 272 F.3d at 462. When such circumstances arise, the trial court can hold a post-trial evidentiary hearing to determine whether the communications were prejudicial or harmless. See Bishwai, 272 F.3d at 462, (citing, inter alia, Rushen, 464 U.S. at 119-20). In this case, after the jury began its deliberations, the judge left the courthouse to attend a charitable function, and dealt with the jury's questions over the phone. After the jury reached its verdict, the trial judge held two post-trial hearing on the ex parte communications issues, where the court took testimony from the deputy sheriff and heard the representations of Jones' counsel.

The Illinois Appellate Court correctly analyzed these communications as trial error. Although the judge left the courthouse during jury deliberations, he was available by phone, and retained control over the proceedings. See e.g. Arnold, 238 F.3d at 1154-56 (holding that it was not structural error for a trial judge to address jury questions over the telephone). The judge's response to the questions were not inappropriate, as the judge: (1) denied the request for transcripts because they were not available; (2) told the jury to continue deliberations; and (3) gave a definition of reasonable doubt that was not improper, cf. Sullivan, 508 U.S. at 276-82. Compare Riley 56 F.3d at 1119-22 (complete abdication of judicial control); Delgado, 67 F. Supp. 2d at 1159-63 (structural error where judge gave an ex parte substantive instruction). This is not to condone such a course of action, however. The judge should be available to address jury questions, and for any such questions to be made on the record with counsel and the defendant present. But, in light of the facts of this case, the judge's error was not structural. He retained judicial control of the proceedings, and did not abdicate his duties. Compare Riley, 56 F.3d at 1119-22 with Arnold, 238 F.3d at 1154-56; see also Rushen, 464 U.S. at 117-22; Winter, 274 F.3d at 1168; Bishawi, 272 F.3d at 461-63; Ellsworth, 248 F.3d at 640-42; Ashford, 167 F.3d at 1136-37.

### b. Habeas Review of Harmless Error Analysis:

Having determined that the Illinois Appellate Court correctly classified the ex parte communications as trial error subject to harmless error review, the court's next task is to determine whether the Illinois court's harmless error analysis was itself erroneous. See Brecht, 507 U.S. at 635-36 (discussing the differences between direct and collateral review). There is an unresolved question of whether federal habeas review of a state court's harmless error analysis is governed by

§ 2254 as amended by AEDPA, or the pre-AEDPA standards announced in Brecht. See Anderson v. Cowan, 227 F.3d 893, 898 n. 3 (7th Cir. 2000).

When a trial error is reviewed on direct appeal, the reviewing court is to determine whether the error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967). On federal habeas review, however, the court does not make its own harmless error determination. Instead, the court engages in a deferential review of the state court's harmless error analysis. See Brecht, 507 U.S. at 622-23 & 630-39 (reiterating the differences between direct appeal and collateral review, and holding that the principles of comity, federalism, and respect for criminal proceedings require on collateral review a more relaxed harmless error analysis).

Brecht was decided three years prior to the effective date of the AEDPA. Under Brecht, habeas relief will not be granted unless the petitioner demonstrates that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637-38 (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The Supreme Court further refined this standard in O'Neal v. McAninch, 513 U.S. 432 (1995), where the Court held that the petitioner must prevail when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error." Id. at 437. By contrast, § 2254 as amended by AEDPA only allows a writ to issue when the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

After AEDPA, the Brecht/O'Neal standard is in doubt, because § 2254 does not announce a different standard for harmless error analysis, as opposed to any other issue that may be the basis for habeas relief. See e.g. Anderson, 227 F.3d at 898 n. 3. The Seventh Circuit has not yet decided the issue. See id. The Sixth Circuit has held that AEDPA does not change the analysis because

15

"Brecht quite precisely captures Congress's intent as expressed in AEDPA and, therefore, continues to be applicable." Nevers v. Killinger, 169 F.3d 352, 371 (6th Cir. 1999), abrogated on other grounds as recognized by Harris v. Stoval, 212 F.3d 940, 942-53 (6th Cir. 2000). But, the Sixth Circuit's view has not been universally accepted, and has been expressly questioned by the Eighth Circuit. See Anderson, 227 F.3d at 898 n. 3 (discussing Nevers and Whitmore v. Kemna, 213 F.3d 431, 433 (8th Cir. 2000)). Recently, the Supreme Court cited Brecht in a post-AEDPA opinion, but did not confront the issue of whether Brecht governs federal habeas review of state court harmless error analysis. See Penry v. Johnson, 121 S. Ct. 1910, 1919-20 (2001).

The court is mindful of this unsettled state of the law, but concludes that Jones is not entitled to habeas relief under either standard. The court begins with the AEDPA. First, the Illinois Appellate Court's harmless error analysis was appropriate for the issue of ex parte communications between the judge and jury. See Rushen, 464 U.S. at 118-19. Relying on People v. Childs, 636 N.E.2d 534 (Ill. 1994), the Illinois Court found that the error was harmless beyond a reasonable doubt, and placed the burden of proving that on the state. This analysis was not contrary to federal law. Quite the opposite, the analysis was entirely consistent with the Supreme Court's mandate from Chapman, as it placed the burden on the prosecution to prove the error harmless beyond a reasonable doubt.

Nor can it be said that the Illinois Appellate Court's analysis was an unreasonable application of federal law. The Court noted that the jury questions should have been addressed in open court. The Court then analyzed the jury's requests and the judge's telephonic responses under the totality of the circumstances. Specifically, the Court found that the judge was correct in refusing to provide transcripts and in ordering the jury to continue to deliberate. The Court also held that it was proper

not to give a definition of reasonable doubt, and that the reference to "It's what it means to you" was harmless in full context of the trial, particularly considering the other proper instructions given to the jury. The Court addressed the issue squarely, on a full record, and applied the correct federal precedent. Jones offers nothing to demonstrate that the analysis was unreasonable. To the contrary, the Illinois Appellate Court's analysis was a quite reasonable analysis of the law and facts. Thus, under the standards announced in AEDPA, there is no basis to grant habeas relief.

Turning to the Brecht standard, Jones fails to demonstrate that the ex parte communications had a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 637-38. Jones complains vehemently of the fact of the ex parte communications, but offers nothing to demonstrate that the ex parte communications affected or influenced the jury's verdict to his detriment. The trial court held two post-trial hearings on the matter, and the Illinois Appellate Court addressed the issue on direct appeal. Jones has had several opportunities to demonstrate harm coming to him as a result of the ex parte communications, and the record is silent on the point. Accordingly, Jones is not entitled to habeas relief on the ex parte communication issue.

### 3. Communications with African-American Jurors:

Jones asserts that the judge at his first trial communicated with the African-American jurors, causing them to vote to convict. Jones did not raise this claim on direct appeal, which is normally grounds for a finding of waiver under Illinois law. However, Jones did raise the claim in his post-conviction petition, and the Illinois Appellate Court examined the merits of the claim in granting the Finley motion. See Wilkinson, 231 F.3d at 350-52. Thus, the court examines the merits of claim.

Jones presents absolutely no evidence or argument in support of this claim. It is his burden to present factual evidence and legal argument so as to warrant the need for a hearing or to grant

17

habeas relief. <u>See</u> 28 U.S.C. §§ 2254(d)(1) & (e)(2); <u>Warren v. Richland Cty. Cir. Ct.</u>, 223 F.3d 454, 456 (7th Cir. 2000); Rule 2(c) of the Rules Governing Section 2254 Cases. Jones' entire proffer on the issue is limited to: "The court's communications with the only two African-American jurors on his jury caused those jurors to vote to convict petitioner." (Pet. pg. 7.) Jones fails to present any facts, such as the content and context of the alleged communication, when and how it occurred, and how the alleged communication influenced the jurors. In the absence of any evidentiary proffer or legal argument, the court denies this claim on its merits.

### 4. Coerced Verdict:

Jones' next claim is that the judge presiding over the first trial coerced a verdict by inquiring into the jury's numerical division. After the judge received the jury questions discussed above, he returned to the courthouse, and summoned the jury and parties. The judge then advised the jury that he was going to ask for a count of their division, but did not want to know which verdict the majority favored. The jury advised the judge they were at 10-2, and did not indicate the majority view. The judge then ordered the jury to continue to deliberate. After approximately thirty minutes, the jury found Jones guilty of attempted robbery, but said they were deadlocked on the murder charge. The judge accepted the verdict on the attempted robbery, and declared a mistrial on the murder count.

This claim is not a basis for habeas relief. Relief under § 2254 is only available for violations of federal law, and the error here is not of Constitutional magnitude. In <u>Brasfield v. United States</u>, 272 U.S. 448 (1926), the Supreme Court held that it is reversible error for a federal court to inquire as to a jury's numerical division. <u>Id.</u> at 449-50. This rule is based on the Supreme Court's supervisory powers over the federal courts. The rule is not Constitutionally based, and is not applicable to the states through the Fourteenth Amendment. <u>See United States ex rel Kirk v.</u>

<u>Director, Dept. of Corrections, State of Illinois</u>, 678 F.2d 723, 725-27 (7th Cir. 1982); <u>see also</u> <u>Montoya v. Scott</u>, 65 F.3d 405, 412 (5th Cir. 1995) (collecting authority and noting that the Circuit Courts of Appeal are in agreement that a state judge's numerical inquiry of a jury is not a basis for federal habeas relief).

The possible exception to the rule is if, after review of the entire record, a federal habeas court is left with the "overwhelming impression that the trial judge's inquiry did in fact coerce the jury." <u>Kirk</u>, 678 F.2d at 727; <u>cf.</u> <u>Tucker v. Catoe</u>, 221 F.3d 600, 611-14 (4th Cir. 2000) (finding an <u>Allen</u> charge unduly coercive where, inter alia, the trial judge knew that the jury was divided 11-1 in favor of imposing the death penalty). In this case, the court is not left with that overwhelming impression. The trial judge did not inquire of the majority view, and the jury did not reveal which verdict the majority favored. In the absence of knowing which verdict is favored, there is an inference of non-coercion. <u>Compare</u> <u>Tucker</u>, 221 F.3d at 611-14. Moreover, the Illinois Appellate Court reviewed the record, and found that the error was harmless because the judge specifically told the jury not to reveal the verdict the majority favored. This claim is denied on its merits.

### 5. Marvel's Testimony:

Jones' next claim concerns the testimony of Clifton Marvel, the off duty deputy sheriff that saw Jones running away from the shooting. Jones claims that Marvel perjured himself, threatened a defense witness, and withheld evidence that would have impeached his testimony. Again, it is Jones' burden to present facts to support his claims, so as to demonstrate that the state court decision was contrary to, or an unreasonable application of, Supreme Court precedent. <u>See</u> 28 U.S.C. §§ 2254(d)(1) & (e)(2); <u>Warren</u>, 223 F.3d at 456; Rule 2(c) of the Rules Governing Section 2254 Cases. Jones presents absolutely no facts or evidence in support of these claims. Jones fails to make any

proffer concerning Marvel's allegedly perjurious testimony, or his purported threats against a witness, or the evidence he allegedly withheld. All that Jones presents is his own unsupported assertion that Marvel lied, threatened, and withheld, which is insufficient to warrant further attention. This claim is denied on its merits.

### 6. Binion's Testimony:

Similar to Jones' claim about Marvel's testimony, Jones asserts that the prosecution knowingly used the perjured testimony of Leanne Binion. According to Jones, Ms. Binion's "testimony was contradicted by her statement to police and the State's answer to discovery." (Pet. pg. 7.) That single line is all that Jones presents. Jones presents no proffer of evidence or other illumination as to what was untruthful about Ms. Binion's testimony. Again, it is Jones' burden to present evidence in support his claim, and his failure to do so warrants denial of habeas relief on the merits. The court adds that any inconsistencies in Ms. Binion's testimony is a credibility issue to be determined by the jury, which resolved the matter against Jones. See 28 U.S.C. 2254(e).

### 7. Ineffective Assistance of Trial Counsel:

Jones next raises three ineffective assistance of counsel claims, based on: (1) counsel failing to tell him there were notes from the jury; (2) counsel failing to present evidence of prior conflicts between Jones and Marvel; and (3) counsel failing to call a witness that Jones claims would exculpate him. Ineffective assistance of counsel claims are governed by the familiar standard of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Jones must first demonstrate that his counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. Then, Jones has to show that the deficient performance prejudiced his defense, meaning that but for the deficient representation, the result of the trial would

20

have been different. See id. at 694. The court views counsel's performance deferentially, particularly counsel's choice of strategies. See Drake v. Clark, 14 F.3d 351, 355 (7th Cir. 1994) (noting that there is a heavy burden in demonstrating an ineffective assistance claim).

First, concerning counsel's purported failure to inform Jones of note from the jury, the court presumes that Jones is referring to the notes that were formed the basis for the ex parte communications issue, analyzed above. (See supra pp. 9-17.) Proceeding directly to the prejudice prong of Strickland, it is plain that Jones cannot demonstrate the prejudice necessary. The Illinois Appellate Court found the ex parte communications harmless beyond a reasonable doubt. Thus, counsel's alleged failure to inform Jones about the existence of the notes could not have caused him prejudice.

Second, as for Jones' assertion that counsel should have presented evidence concerning conflicts between Jones and Marvel, that is an issue of trial strategy. Strickland and its progeny do not allow hindsight based attacks on counsel's tactical choices. See Drake, 14 F.3d at 355-57. The evidence Jones claims should have been presented is that Jones fought with one of Marvel's relatives while they were incarcerated at the Cook County jail, and that Jones had been engaged in drug dealing with other relatives of Marvel. This kind of information could easily be harmful to Jones, as it is evidence from which the jury could infer that Jones was an incarcerated drug dealer with violent tendencies. It is only after Jones has been convicted that he seeks to go back and introduce such risky evidence. Counsel's decision not to pursue this line of impeachment was well within the range of objective strategic decisions, and cannot form the basis of an ineffective assistance claim.

Finally, Jones' claim that counsel should have presented Ms. Boykin as a witness fails because Jones does not present any proffer concerning her testimony. To present a claim based on

21

a failure to call a witness, Jones must make "a specific affirmative showing as to what the missing evidence would have been . . . and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994) (internal citations omitted). Jones failed to present any such affidavit from Ms. Boykin in the Illinois courts, and similarly fails to present anything now on habeas review. Without some showing of the witness' evidence, there is no way for the court to determine if counsel's failure to call the witness was a professional lapse or a tactical choice. Similarly, there is no way to determine what prejudice, if any, resulted from the uncalled witness. Jones' claim of ineffective assistance of trial counsel is rejected on its merits.

### 8.  Jury Prejudice:

Jones' next claim is that certain members of the jury were prejudiced against him because they had relatives in law enforcement, and there were law enforcement witnesses that testified at trial. The Sixth Amendment guarantees a criminal defendant a trial by an impartial jury, which binds the states through the Fourteenth Amendment. See Porter v. Gramley, 112 F.3d 1308, 1315 (7th Cir. 1997) (citing Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968); Parker v. Gladden, 385 U.S. 363, 364 (1966)). Once again, Jones fails to present any facts to support his speculation that the jury was partial. See 28 U.S.C. §§2254(d)(1) & (e)(2); see also Whitehead v. Cowan, 263 F.3d 708, 721-22 (7th Cir. 2001) (rejecting a habeas claim based on the petitioner's speculation that the jury was prejudiced against him because their identities were published in the local media). As the Seventh Circuit reiterated in Whitehead, the due process concern with a fair and impartial jury is safeguarded by voir dire and judicial control. See Whitehead, 263 F.3d at 722 (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). Jones' mere speculation that some unidentified jurors may not have been

impartial because they have relatives in law enforcement is insufficient to grant habeas relief. See Whitehead, 263 F.3d at 719-26.

### 9. Deputy Sheriff Bias:

Jones next argues that the deputy sheriff assigned to the trial should not have been allowed to communicate with the jury because the deputy said that the state had never lost a case in that courtroom. Jones claims the deputy also said she would make sure Jones would lose his re-trial on the murder charge in retaliation for having been called as a witness in the post-trial motions on the ex parte communications issue.

Improper communications between a deputy sheriff, bailiff, or other court personnel and a jury may be a basis for habeas relief. See Agnew v. Leibach, 250 F.3d 1123, 1129-35 (7th Cir. 2001) (and cases discussed therein). But, once again, Jones presents no evidence of any such communications. Jones' assertion is that the deputy sheriff made statements to Jones indicating her prejudice against him. There is nothing in the record concerning any improper communications between either of the juries and the deputy sheriff assigned to Jones' trials. This claim is denied on its merits.

### 10. Erroneous Jury Instruction:

Next, Jones argues that the trial judge erroneously instructed the jury concerning the multiple charges against him. According to Jones, the trial judge instructed the jury that it "could convict [Jones] of one charge and convict (sic - Jones must have intended 'acquit') him of another, signal[ing] to the jury that the court believed that the jury should find [Jones] guilty of something." (Pet. pp. 7-8.) Jones did not raise this issue on direct appeal, but included it in his post-conviction

petition, where it was rejected as waived or res judicata. Respondent contends that Jones waived the claim under Illinois law, but the court does not agree.

There is a distinction under Illinois post-conviction law between the doctrines of waiver and res judicata. See Gomez v. Acevedo, 106 F.3d 192, 196 (7th Cir.1997) (citing People v. Coleman, 660 N.E.2d 919, 927 (Ill.1995)), vacated on other grounds, 118 S. Ct. 37 (1998)). Illinois law deems issues raised in a post conviction petition to be res judicata if the issue was raised on direct appeal. See Gomez, 106 F.3d at 196. But, if a post conviction issue was not raised on direct appeal, Illinois law deems the issue waived. See id. The distinction is important to federal courts because waiver is an independent and adequate state law basis that precludes habeas review, while an issue that is res judicata is not waived and is subject to federal habeas consideration. See id.; Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997).

Respondent argues that Jones waived the jury instruction issue by not pursuing it on direct appeal. For waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun, 227 F.3d at 912. If not, the merits of the issue are preserved for federal habeas review. See id. And, Wilkinson holds that the merits of post conviction issues are preserved for habeas review when a state court grants a Finley motion, and writes that it has carefully reviewed the record and found no issues of merit. See Wilkinson, 231 F.3d at 350-52. In this case, that is what happened. Jones waited until he filed his post conviction petition to raise the jury instruction issue, which is grounds under Illinois law for a finding of waiver. But when the Illinois Appellate Court granted counsel's Finley motion, it stated that it had reviewed the record and found no issues of merit. That decision was the last word from the Illinois courts on the issue, and it addressed the merits of Jones' jury instruction claim, rather

than resting on waiver. See Braun, 227 F.3d at 912. Under Wilkinson, the merits of the issue are preserved for habeas review. See Wilkinson, 231 F.3d at 350-52.

All of that said, however, the issue is not grounds for relief. Again, it is Jones' burden to demonstrate that the instruction was contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Jones offers no detail about the allegedly erroneous instruction, such as the exact wording of the instruction, whether it was given as part of the original instructions or was a supplemental instruction, and whether he objected at the time the instruction was given. All that Jones presents is a cryptic conclusion, without factual support or legal argument, that the trial judge signaled to the jury it should convict Jones of something. That allegation is insufficient to grant habeas relief.

### 11. Trial Judge Prejudice:

Jones' next claim is that the trial judge exhibited hostility towards' Jones attorney, and said that the judge would never try a case with that attorney again. Judicial prejudice can violate a criminal defendant's Constitutional right to a fair trial, and can be the basis for habeas relief. See e.g. Bracy v. Gramley, 520 U.S. 899, 117 S. Ct. 1793, 1797 (1997). Judges, however, are presumed to be impartial, and this presumption can only be rebutted with specific facts demonstrating judicial prejudice or bias. See Bracy, 117 S. Ct. at 1799; Aleman v. Judges of Circuit Court of Cook County, 138 F.3d 302, 307 (7th Cir. 1998); cf. United States v. LeFevour, 798 F.2d 977, 984-85 (7th Cir. 1986) (on direct appeal rejecting a claim of judicial bias). Jones fails to carry this burden. As he has done throughout this petition, Jones merely asserts that the trial judge was prejudiced against him without providing any factual support for the claim. This claim is likewise denied on its merits.

## 12.  Lineup:

Jones' next claim is that the lineup in which Marvel identified Jones was unfair because the police allowed Marvel to view Jones alone prior to the lineup, and Jones was the only light skinned person in the lineup.  Respondent contends that Jones waived this claim by not raising it on direct appeal, but the court rejects this position for the same reasons the court addressed in response to Jones' claim that the trial judge gave an erroneous jury instruction.  (See supra pp. 23-25.)

To obtain habeas relief on this point, Jones must demonstrate both that the pre-trial identification procedure was unnecessarily suggestive and that a later in-court identification was also unreliable.  See Neil v. Biggers, 409 U.S. 188, 199-200 (1972); Rodriguez, 63 F.3d at 555-56; see also United States v. Rutledge, 40 F.3d 879, 889 (7th Cir. 1994) (identification analysis on direct appeal), rev'd on other grounds, 517 U.S. 292 (1996).  A criminal defendant has a due process right to be free from a pre-trial identification procedure that is "'unnecessarily suggestive and conducive to irreparable mistaken identification.'" Cossel v. Miller, 229 F.3d 649, 655 (7th Cir. 2000) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967)); see also Biggers, 409 U.S. at 199-200 (reiterating that misidentification is the due process violation, and discussing factors to consider whether a pre-trial lineup was unnecessarily suggestive).  If the pre-trial identification was impermissibly suggestive, the habeas petitioner must also demonstrate that a later in-court identification was not reliable.  See Cossel, 229 F.3d at 655; Rodriguez, 63 F.3d at 555-56.  In this case, Jones fails to succeed on either point.  Jones merely concludes, without factual support, that Marvel's pre-trial identification of Jones was unnecessarily suggestive.  Even if the court were to assume that was true, which it does not, Jones still has to demonstrate that Marvel identified Jones during the course of the trial, and that Marvel's in-court identification was unreliable under the totality of the

circumstances. See Biggers, 409 U.S. at 199-200 (noting that the totality of the circumstances may be determined by examining "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."). Jones does not even attempt to develop the in-court aspect of this issue. This claim is denied on its merits.

**13. Batson Issue:**

Next, Jones argues that the prosecution used a disproportionate share of its peremptory challenges to exclude African-Americans from the jury at Jones' first trial. Jones raised this issue at trial and on direct appeal.[4] The trial judge ruled that Jones failed to present a prima facie case of discrimination under Batson v. Kentucky, 476 U.S. 97 (1986). On direct appeal, the Illinois Appellate Court also analyzed the issue under Batson, and affirmed the trial judge's finding that Jones failed to demonstrate a prima facie case of discrimination.

The Illinois Appellate Court analyzed the issue under Batson, which is the correct precedent to apply to a claim of discrimination in the state's use of peremptory challenges during jury selection. See Batson, 476 U.S. 84-100. Batson analysis is a three step process. See United States v. Alanis, 265 F.3d 576, 584 (7th Cir. 2001). First, the defendant must make a prima facie showing of discrimination. Id. The burden then shifts to the prosecution to present a race neutral explanation for use of the peremptory challenge. See id. If the prosecution does so, the court must determine

---

[4]Jones did not raise this issue in his post-conviction petition. Arguably he has waived federal habeas review of the issue. See O'Sullivan, 526 U.S. at 848. But, Respondent argues the merits of the issue instead of waiver, and that is how the court will analyze the issue. See 28 U.S.C. § 2254(b)(2).

whether the prosecution's stated reason is pretextual and whether the defendant has proven purposeful discrimination. Id. (citing United States v. Jordan, 223 F.3d 676, 686 (7th Cir. 2000)).

To make a prima facie showing under Batson, the defendant must demonstrate that the prosecution has used peremptory challenges to remove potential jurors belonging to a protected class, and the relevant circumstances create an inference of intentional discrimination. See Anderson, 227 F.3d at 901. The Illinois Appellate Court correctly proceeded in this manner, and considered the relevant circumstances. The Court noted that the prosecution used three of its five peremptory challenges to strike African-Americans from the venire. But, the Court found that the three venire members were not a homogenous group that had race as their only common characteristic. One venire member had newborn twins and a father that was a retired preacher. Another member was a lawyer that practiced criminal law and knew Jones' counsel. The third venire member had a brother that had recently been convicted of a felony and sentenced to prison. The Illinois Appellate Court held that each of these potential jurors had unique characteristics that supported the prosecution's use of peremptory challenges.

The Illinois Appellate Court went on to note that Jones' crimes were not interracial crimes, and that the trial judge rather than counsel had conducted the voir dire. Jones failed to present any evidence of relevant circumstances to raise an inference that the prosecution's use of its peremptory challenges was based on race.

The Illinois Appellate Court's analysis was not an unreasonable application of Batson. The Court carefully considered the proper analytical framework of Batson, the trial judge's ruling, the evidence concerning the challenged venire members, and the absence of circumstances that would support an inference of discrimination. This claim is denied on its merits.

### 14. Prosecutor's Misstatement of the Law:

During closing argument, the prosecutor made a statement of law to the effect that the crime of armed robbery is not complete until the perpetrator has made his escape. This statement was erroneous under Illinois law. See People v. Dennis, 692 N.E.2d 325, 333-36 (Ill. 1998). A prosecutor's misstatement of the law during closing arguments may be the basis for habeas relief, particularly when the erroneous statements are repeated and/or allowed by the trial court. See e.g. Whitehead, 263 F.3d at 729; (discussing, inter alia, Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Jones argues that the prosecutor's statement requires habeas relief because the jury was misled into believing it could convict Jones of attempted armed robbery even if Jones only assisted Wells after completion of the offense. The argument is without merit.

The Illinois Appellate Court addressed the issue on direct appeal, and found that the error, if any, was harmless. The Court noted that Jones' counsel objected to the prosecutor's statement, the trial judge sustained the objection, and the trial judge then provided the jury with the correct instructions concerning the substantive law of attempted armed robbery and accountability. As with the ex parte communication issue discussed supra, the court finds that the Illinois Appellate Court's harmless error analysis passes muster under both the AEDPA and Brecht.

First, under the AEDPA, Jones fails to demonstrate that the state court ruling was contrary to, or an unreasonable application of, United States Supreme Court precedent. It is settled law that sustained objections and proper jury instructions can cure Constitutional issues that arise during trial. See e.g. Jones v. United States, 119 S. Ct. 2090, 2103 (1999) (collecting authority); see also United States v. Hasting, 461 U.S. 499, 508-09 (1983) ("there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial."); Chapman, 386 U.S. at 24 (on direct

29

appeal, the reviewing court is to determine if an error was harmless beyond a reasonable doubt). The prosecutor made a misstatement of Illinois law, but the trial judge sustained Jones' objection, and properly instructed the jury on the substantive law. The state court's harmless error conclusion was neither contrary to nor an unreasonable application of federal law.

Nor does Jones demonstrate that the prosecutor's statement had a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 637-38. The court presumes that the sustained objection and proper instructions on the substantive law cured any ill effects of the prosecutor's misstatement. See Jones, 119 S. Ct. at 2103; cf. Hasting, 461 U.S. at 508-09. Jones offers nothing to the contrary. This claim is denied on its merits.

### 15. Hearsay Issue:

Next, Jones argues that admission of hearsay evidence violated his Sixth Amendment right to cross examine the witnesses against him. At Jones' first trial, Detective Ptak testified that he interviewed Jones' Co-Defendant, Wells, the day after the murder. Ptak said that after discussing matters with Wells, Ptak went to Jones' home. Jones argues that Ptak's testimony inferentially implicated Jones, even though Ptak did not testify as to any statements by Wells. Respondent argues, and the court agrees, that this claim is procedurally barred.

Jones raised this issue on direct appeal, where the Illinois Appellate Court denied it on its merits. Thereafter, Jones never again raised the claim in the state court proceedings. Jones failed to raise it in his petition for leave to appeal to the Illinois Supreme Court, and similarly failed to include the claim in any of his post-conviction pleadings. As discussed above, failure to fairly present an issue to the state court is a procedural default that bars federal habeas review, O'Sullivan, 526 U.S. at 842-43; Rodriguez, 193 F.3d at 916, unless Jones shows cause and prejudice or a

fundamental miscarriage of justice. See Edwards, 120 S. Ct. at 1591; Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917. Jones presents no evidence of cause and prejudice, and similarly presents nothing to demonstrate a fundamental miscarriage of justice. Jones has procedurally defaulted this issue.

**16.  No Appeal of Issues From the Second Trial:**

Finally, Jones argues that his appellate counsel was ineffective for failing to raise issues that arose during the second murder trial. All of the issues raised on direct appeal came from the first trial. Jones argues that his appellate counsel was ineffective for failing to raise any issues out of the second trial. Jones has procedurally defaulted this issue because he did not raise it during any of the state proceedings. The only way the court can review the claim is if Jones can demonstrate cause and prejudice or a fundamental miscarriage of justice. Edwards, 120 S. Ct. at 1591; O'Sullivan, 526 U.S. at 842-43; Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 916. Jones does not even attempt to do so. Accordingly, this claim is procedurally defaulted.

### III.  CONCLUSION

For the foregoing reasons, the court denies Jones' application for a writ of habeas corpus under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: __2/6/02__